UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN CANTU and JOHN DOWNES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE BRINK'S COMPANY,[1] <br><br> Defendant. | ) ) ) ) ) ) Case No. 1:15-cv-09240 ) ) Judge Samuel Der-Yeghiayan ) ) ) ) |

**MEMORANDUM IN SUPPORT OF
MOTION TO STRIKE CLASS ALLEGATIONS, TO DISMISS THE COMPLAINT
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant Brink's Incorporated ("Brink's" or "Defendant") moves to strike the class allegations from Plaintiffs' Complaint pursuant to Rule 12(f), to dismiss the Complaint pursuant to 12(b)(6) or, in the alternative, to grant summary judgment for Brink's pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support, Brink's states as follows:

**Introduction**

Plaintiff John Cantu, a former armored truck driver and messenger for Brink's, and Plaintiff John Downes, a former armored truck messenger for Brink's, have filed this action asserting overtime violations under the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL"). The law surrounding armored truck drivers and messengers in the Seventh Circuit is well settled – they are exempt from overtime under the Motor Carrier Act (the "Act") exemption. Despite this well-established body of law, Plaintiffs attempt to bring their claims as a putative nationwide collective action under the FLSA and a putative state-wide class action under the IMWL.

---

[1] The Complaint incorrectly names Defendant as "The Brink's Company," when Brink's Incorporated is the entity that employs (or employed) the named Plaintiffs. At Brink's request, Plaintiffs have agreed to move to correct the proper entity name from "The Brink's Company" to "Brink's Incorporated."

The entire basis for this overtime claim is the Complaint's assertion that the Motor Carrier Act, which would exempt Plaintiffs from any overtime pay, does not apply. However, the Complaint does not contain even a formulaic recitation of the elements of the Motor Carrier Act exemption – much less any facts to show it does not apply. Under *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal*, however, this Complaint lacks sufficient facts supporting Plaintiffs' bare legal conclusions that they are entitled to overtime, especially in light of governing authority establishing that armored truck crews such as Plaintiffs are exempt from overtime pursuant to the federal Motor Carrier Act.

This is a fundamental defect that requires the Court to strike Plaintiffs' class action allegations under Rule 12(f) and to preclude the pursuit of this matter as an FLSA collective action or a Rule 23 class action. In addition, this Court should dismiss Plaintiffs' claims under *Twombly* and *Iqbal* pursuant to Rule 12(b)(6) or, in the alternative, grant summary judgment for Brink's pursuant to Rule 56, as set forth below.

### Statement of Material Facts

To the extent the Court construes this motion as one for summary judgment, Brink's has filed contemporaneously herewith a Local Rule 56.1 Statement. A summary of those facts is set forth herein (referenced as "SMF ¶__"). Brink's is a certified contract carrier with the Federal Motor Carrier Safety Administration ("FMCSA"), authorized to operate in interstate commerce and to transport currency and property under U.S. Department of Transportation ("USDOT") No. 76054. (SMF ¶7). Brink's is in the business of transporting, protecting, processing and storing coin, currency, negotiable instruments such as checks, jewelry and other valuables ("Liability") for its customers. (SMF ¶6). Brink's provides these services to its customers intrastate, interstate and internationally. (*Id.*)

Plaintiffs Cantu and Downes formerly worked for Brink's as either Drivers or Messengers. (SMF ¶¶4-5). Brink's Drivers and Messengers are responsible for transporting Liability in armored vehicles and for guarding and protecting it during transit and delivery. (SMF ¶8). They are licensed to carry and do, in fact, carry weapons. (*Id.*) They must adhere to the Federal Motor Carrier Safety Regulations ("FMCSR") and the FMCSA's safety standards and have job duties that directly affect the operational safety of the armored vehicles. (SMF ¶9). Brink's Drivers and Messengers, including Plaintiffs, transport property in interstate and/or foreign commerce. (SMF ¶10). During the course of Plaintiffs' employment with Brink's, they exclusively drove and/or guarded trucks in excess of a Gross Vehicle Weight Rating ("GVWR") of 10,001 or more pounds. (SMF ¶11).

### Standard for Dismissal under Rule 12(b)(6) or, in the Alternative, for Summary Judgment Pursuant to Rule 56

On a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded facts in Plaintiffs' Complaint and draws all inferences in their favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Plaintiffs need not allege "detailed factual allegations," they must offer more than "legal conclusions" or "a formulaic recitation of the elements of the cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Naked assertion[s] devoid of further factual enhancement" will not suffice – a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal* at 678.

The Seventh Current has held that to allege a "plausible" claim, Plaintiffs must "give enough details about the subject-matter of the case to present a story that holds together."

*Swanson v. Citibank, N. A.,* 614 F.3d 400, 404 (7th Cir. 2010). "Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal* at 678. When discovery is likely to be more than unusually costly – as with a class or collective action, the Complaint must include as much factual detail as may be required to show that Plaintiffs have a plausible claim. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

The purpose of the plausibility requirement is to avoid the "in terrorem" effect of allowing Plaintiffs with a largely groundless claim to force Defendant into either costly discovery or an increased settlement value." *Id*. Purported FLSA collective actions and state law class actions, as here, fall exactly into this category. Thus, a complaint making collective action and class action allegations – especially one with this established body of case law in the armored vehicle industry – requires greater factual detail to survive dismissal.

If matters outside the pleadings are presented in support of a Rule 12(b)(6) motion, the motion must be treated as one for summary judgment unless the court excludes such matters or has the ability to take judicial notice of them such as matters of public record. Fed.R.Civ.P. 12(d); *Palay v. United States,* 349 F.3d 418, 425 n.5 (7th Cir. 2003) (in resolving a FRCP 12(b)(6) motion to dismiss, court may take judicial notice of matters of public record).

Summary judgment is appropriate where the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A genuine issue for trial exists "if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). An alleged factual dispute that does not rise to a genuine issue of material fact will not alone defeat a motion for summary judgment. *Id*. at 247-48.

The movant initially bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Once the movant has met this burden, the non-movant "may not rest upon the mere allegations or denials" in the Complaint but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). The court must construe all facts in the light most favorable to the non-movant and draw all justifiable inferences in favor of that party. *See Anderson,* 477 U.S. at 255, 106 S. Ct. 2505.

### Standard for Motion to Strike under Rule 12(f)

Rule 12(f) empowers the court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). The court may strike allegations if they bear no possible relation to the controversy or if they might prejudice the objecting party. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664-65 (7th Cir. 1992). The justification for striking class allegations at the pleading stage is grounded in the interest of conserving judicial resources and in preventing defendants from being pressured to settle non-meritorious class claims solely to avoid cumbersome and expensive class discovery. *Padron v. Wal-Mart Stores, Inc.*, 783 F.Supp.2d 1042, 1045 (N.D. Ill. 2011).

In assessing a motion to strike class allegations, a court must evaluate the motion using a standard similar to the standard applied for a motion brought pursuant to Rule 12(b)(6). Following *Twombly* and *Iqbal*, courts identify and disregard legal conclusions and then determine whether the remaining factual allegations, if taken as true, present a plausible claim for relief. *See Iqbal*, 556 U.S. at 678. *See also Wright v. Family Dollar, Inc.*, 2010 WL 4962838, *1 (N.D. Ill. 2010) (granting motion to strike class allegations prior to discovery); *Baker v. Home Depot USA, Inc.*, 2013 WL 271666, *5 (N.D. Ill. 2013) (granting motion to strike class allegations; potential applicability of affirmative defenses precluded class certification);

*Padron v. Wal-Mart Stores, Inc.*, 783 F.Supp.2d 1042, 1045 (N.D. Ill. 2011) (granting motion to dismiss class allegations where allegations were mere "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

## Argument

### A. Plaintiffs are exempt from the overtime provisions of the FLSA under the Motor Carrier Act exemption.

Under the FLSA and the IMWL, covered employees are entitled to overtime pay if they work more than forty hours a week unless their work is subject to an exemption. 29 U.S.C. § 207(a); 820 Ill. Comp. Stat. 105/1 *et seq*. Section 13(b)(1) of the FLSA, codified at 29 U.S.C. § 213(b)(1), provides an overtime exemption for employees within the authority of the Secretary of Transportation to establish qualifications and maximum hours of service under the Motor Carrier Act, 49 U.S.C. § 13501 *et seq*.[2] The IMWL likewise excludes individuals covered by the Motor Carrier Act. 820 ILCS 105/3(d)(7) (excluding from the definition of "employee" under the IMWL individuals who work "for a motor carrier and with respect to whom the U.S. Secretary of Transportation has the power to establish qualifications and maximum hours of services under the provisions of Title 49 U.S.C. …").

Under both federal and Illinois law, the Motor Carrier Act exemption applies to employees of "motor carriers" and "motor private carriers" who, in the performance of their duties as drivers, driver's helpers, loaders or mechanics, affect the safe operation of motor

---

[2] The authority to regulate safety operations for motor vehicles under the Motor Carrier Act originally was provided to the Interstate Commerce Commission ("ICC") and subsequently was transferred to USDOT. Under the Motor Carrier Act, an individual under the jurisdiction of USDOT cannot also be under the jurisdiction of the U.S. Department of Labor ("USDOL"). USDOT retains its jurisdiction over the employees within the scope of its authority regardless of whether it has chosen to exercise its regulatory authority, and the overtime exemption applies to such employees even if there are no USDOT regulations. *Turk v. Buffets, Inc.,* 940 F. Supp. 1255, 1259 (N.D. Ill. 1996), citing *Southland Gasoline Co. v. Bayley,* 319 U.S. 44 (1943) and *Levinson v. Spector Motor Service,* 330 U.S. 649 (1947).

vehicles in transportation on public highways in interstate commerce and who operate a commercial motor vehicle with a GVWR or gross vehicle weight of at least 10,001 pounds, whichever is greater. 29 U.S.C. § 213(b)(1); 820 ILCS 105/3(d)(7).

Various courts have found that Brink's Drivers and Messengers, as well as the drivers and messengers working for other armored car companies, are subject to the Motor Carrier Act exemption. *See, e.g., Jaramillo v. Garda, Inc.*, 2012 WL 4955932 (N.D. Ill. 2012) (Motor Carrier Act exemption barred FLSA and IMWL overtime claims by armored truck drivers); *Hernandez v. Brink's, Inc.*, 2009 WL 113406 (S.D. Fla. 2009) (Motor Carrier Act exemption barred FLSA overtime claims by armored truck messengers, drivers and ATM mechanics); *Baez v. Wells Fargo Armored Service Corp.*, 938 F.2d 180, 182 (11th Cir. 1991) (Motor Carrier Act exemption barred FLSA overtime claims by armored truck drivers, messengers and guards).

Despite this body of case law, the Complaint makes bald legal assertions that Plaintiffs are "not covered by the Motor Carrier exemption of the FLSA." (Complaint ¶¶12-13). However, the Complaint alleges no facts to support these legal conclusions. That is insufficient under *Twombly* and *Iqbal*.

> 1. **The Complaint cannot stand on a legal conclusion that Brink's is not a "motor carrier" when it pleads no facts supporting that conclusion, and the USDOT publically lists Brink's as an authorized "motor carrier."**

The Complaint asserts the legal conclusion that Brink's is "not a 'motor carrier' as that term is used in the 'Motor Carrier' exemption of the FLSA." (Complaint ¶11.) Yet, it provides no background facts to support this legal conclusion.

This Court can take judicial notice of the fact that the USDOT's public website lists Brink's as an authorized "motor carrier." It specifically identifies Brink's as a FMCSA-certified company, authorized to operate in "interstate commerce" and transport "property" and

7

"currency" under "USDOT #76054." *See* http://safer.fmcsa.dot.gov; *see also Palay v. United States,* 349 F.3d 418, 425 n.5 (7th Cir. 2003) (in resolving a FRCP 12(b)(6) motion to dismiss, court may take judicial notice of matters of public record).

When the USDOT publically lists Brink's as an authorized "motor carrier" under USDOT #76054, the Complaint cannot stand on conclusory denials bereft of supporting facts. Moreover, in *Hernandez v. Brink's, Inc.*, 2009 WL 113406, *3 (S.D. Fla. 2009), the court held that Brink's is a "motor carrier that transports property in interstate commerce" because "Brink's transports checks destined for banks outside of Florida and transports property destined for interstate and foreign locations." Director of Operations Ryan McVoy attests that Brink's is an FMCSA-certified contract carrier in the business of providing secured transportation services intrastate, interstate and internationally. Brink's Drivers and Messengers, including Plaintiffs, transport coin, currency, checks, other negotiable instruments and valuables within Illinois that are ultimately bound out-of-state. (McVoy Decl. ¶¶ 3, 6, 12-19).[3]

Like *Hernandez v. Brink's, Inc.*, other courts have held that transporting coin, currency, checks and other negotiable instruments involves the transportation of property in interstate or foreign commerce as defined by the Motor Carrier Act exemption. *See Jaramillo v. Garda, Inc.*, 2012 WL 4955932, *3 (N.D. Ill. 2012) (armored drivers and messengers engaged in interstate commerce by transporting coin, currency, checks and other property); *Baez v. Wells Fargo Armored Service. Corp.*, 938 F.2d 180, 182 (11th Cir. 1991) (drivers, messengers and guards of armored trucks transporting coin, currency, checks and other negotiable instruments engaged in interstate commerce because the "transported checks and other instruments were bound for banks outside the state of Florida").

---

[3] Attached to Defendant's Local Rule 56.1 Statement is the Declaration of Ryan McVoy cited as ("McVoy Decl. ¶_").

The USDOL has reiterated that armored truck employees do not need to cross a state line to be subject to the Motor Carrier Act exemption:

> [E]mployees do not have to cross a state line to be subject to the exemption if they are transporting property destined for another state. Such property may consist of checks drawn on out-of-state banks transported by employees of an armored car company who do not drive across a state line.

*See* USDOL Opinion Letter, 1997 DOL WH LEXIS 19 (Mar. 12, 1997).

Courts in this Circuit and others have reached the same conclusion – that the intrastate transportation of property qualifies as transportation in interstate commerce when the intrastate transportation is part of an interstate journey. *Collins v. Heritage Wine Cellars, Ltd*., 589 F.3d 895, 898 (7th Cir. 2009) (drivers transporting wine from an in-state warehouse to in-state retail locations were involved in interstate commerce); *Craft v. Ray's, LLC*, 2009 U.S. Lexis 90862 (S.D. Ind. 2009) (drivers who transported recyclables from their original location to a storage area in-state were involved in interstate commerce where the employer intended to transport half of the recyclables out of state each month); *see also Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 43 (5th Cir. 1962) (drivers and driver-helpers engaged in only intrastate transportation of empty soft drink bottles were exempt from overtime under Motor Carrier Act exemption because the empty bottles being transported were destined for a bottling plant in the neighboring state).

> **2. "Drivers" such as Cantu and "Driver's Helpers" such as Downes are covered by the Motor Carrier Act exemption because they engage in activities that directly affect the operational safety of armored vehicles.**

The Complaint pleads that Plaintiffs were "armored truck driver/messenger[s]" in Brink's Chicago Branch. (Complaint ¶2). Regulations construing the Motor Carrier Act are plain that "drivers" and "driver's helpers" such as Plaintiffs are covered by the Act because they engage in

9

activities that directly affect the operational safety of the armored trucks. Specifically, "drivers" engage in operational safety activities under the Act when they (1) drive the motor vehicle (29 C.F.R. § 782.3(b)); or (2) can act as assistant or relief drivers while riding in the motor vehicle and helping with loading and unloading (29 C.F.R. § 782.3(a)). "Driver's helpers" include armored guards on armored trucks, due to their safety-focused activities. *See* 29 C.F.R. § 782.4(a) (driver's helpers include "armored guards on armored trucks … because of their engagement in … activities which … directly affect the safety of operation of such motor vehicles").

Director of Operations Ryan McVoy attests that Plaintiffs, whether functioning as Drivers, Messengers or Guards, carry weapons and guard the armored vehicle and its contents during pick-up, transit and delivery. (McVoy Decl. ¶4). Mr. McVoy further attests that it is a condition of employment that all Drivers, including Plaintiff Cantu, be licensed to drive an armored vehicle and qualified to drive an armored vehicle under standards established by USDOT and the Federal Motor Carrier Safety Regulations ("FMCSR"). (*Id*. ¶8). Messengers and Guards also ride in the armored vehicle, guard it and assist in loading and unloading it. (*Id*. ¶¶4, 9).

Courts have further held that Drivers and Messengers like Plaintiffs fall within the definition of "drivers" or "driver's helpers" under the Act. *See Hernandez v. Brink's, Inc.*, 2009 WL 113406, *4 (S.D. Fla. 2009) ("Plaintiffs who worked as Drivers fall within the regulation's definition of drivers who affect the safety of operation and are therefore covered by the FLSA's motor carrier exemption"; "Messengers … are also covered by the … exemption as driver's helpers"); *Baez v. Wells Fargo Armored Service Corp.*, 938 F.2d 180, 182 (11th Cir. 1991) ("driver guards, messenger guards and guards" for armored truck company were driver's helpers

10

that "performed services which affect the safety of the vehicle," citing to 29 CFR §782.4); *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 43 (5th Cir. 1962) ("guards on armored bank trucks … performed services which affect the safety of the vehicle"); *Jaramillo v. Garda, Inc.*, 2012 WL 4955932, *3 (N.D. Ill. 2012) (armored drivers and messengers "engage in activities which directly affect the operational safety of vehicles").

### 3. The Motor Carrier Act exemption plainly applies when every armored vehicle that Plaintiffs drove or guarded weighed in excess of 10,001 pounds.

Every armored vehicle that Plaintiffs drove or guarded during their employment with Brink's had a GVWR of 10,001 or more pounds. (McVoy Decl. ¶11). Plaintiffs never drove or guarded an armored vehicle that weighed less than 10,001 pounds. (*Id.*) In fact, all armored vehicles in the Chicago fleet during this timeframe had a GVWR of 10,001 or more pounds. (*Id.*) Because Plaintiffs drove or guarded only trucks covered by the Motor Carrier Act throughout their employment, there is no question as to the application of this exemption. *See also Jaramillo v. Garda, Inc.*, 2012 WL 4955932, *5 (N.D. Ill. 2012) (Motor Carrier Act exemption applied when the employee drove armored trucks weighing at least 10,001 pounds and "could be expected to drive a large vehicle on any given day of his employment").

### B. Plaintiffs are exempt from the overtime provisions of the IMWL.

The IMWL excludes from the definition of "employee" those individuals for whom the Secretary of Transportation has jurisdiction under the Motor Carrier Act. 820 ILCS 105/3(d)(7); *see Barron v. Lee Enterprises, Inc.,* 183 F.Supp.2d 1077, 1088 (C.D. Ill. 2002) (employees exempt from the FLSA's overtime provisions under the federal Motor Carrier Act exemption are also exempt from the overtime provisions of the IMWL). Accordingly, Plaintiffs are not covered by the IMWL's overtime requirements.

**Conclusion**

The Complaint cannot stand on a conclusory denial of the application of the Motor Carrier Act exemption to Plaintiffs. Multiple cases, as discussed throughout this motion, have analyzed this exemption and found it applicable to Brink's Drivers and Messengers and other similar companies. Accordingly, Defendant Brink's Incorporated respectfully requests that the Court strike the class allegations and dismiss this lawsuit, in its entirety and with prejudice, and grant Defendant all other just and proper relief.

Should the Court convert this motion to a motion for summary judgment, the evidence filed in support shows that there is no issue of material fact as to application of the federal or Illinois Motor Carrier Act exemption to Plaintiffs. Accordingly, summary judgment should be granted for Brink's and against Plaintiffs.

Respectfully submitted,

BRINK'S INCORPORATED

By: /s/ Anne E. Larson
      One of Its Attorneys

Anne E. Larson
Norma Manjarrez
OGLETREE, DEAKINS, NASH, SMOAK &
  STEWART, P.C.
155 N. Wacker Drive
Suite 4300
Chicago, IL 60606
312.558.1220

Dated: January 11, 2016

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on January 11, 2016, the foregoing **Memorandum in Support of Motion to Strike Class Allegations, to Dismiss the Complaint or, in the Alternative, for Summary Judgment** was filed electronically with the Clerk of Court using the ECF system, which sent notification of such filing to the following:

Terrence Buehler
Touhy, Touhy, & Buehler, LLP
55 West Wacker Drive, Suite 1400
Chicago, Illinois 60601

Peter Lubin
Vincent DiTommaso
DiTommaso-Lubin, P.C.
The Oak Brook Terrace Atrium
17W2200 22d Street, Suite 200
Oak Brook Terrace, Illinois 60181


/s/ Anne E. Larson

23290683.2