# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN CANTU, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 15 C 9240 |
| | ) | |
| **THE BRINK'S COMPANY,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant The Brink's Company's (TBC) motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted.

## BACKGROUND

Plaintiff John Cantu (Cantu) and Plaintiff John Downes (Downes) allegedly each worked for TBC. Cantu allegedly worked as an armored car driver and a messenger, and Downes allegedly worked as a messenger. Plaintiffs contend that they were paid overtime for hours worked between 40 and 45 hours, but that they were not paid time and a half for overtime for hours worked in excess of 45 hours. Plaintiffs include in their complaint claims alleging violations of the minimum wages

1

and overtime wages provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* (Count I), and claims alleging violations of the overtime wages provisions of the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1 *et seq.* (Count II). TBC moves to dismiss all claims, and moves in the alternative to treat TBC's motion as a motion for summary judgment. Since TBC seeks to rely on matters outside of the pleadings, the court will convert the motion to dismiss into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). Plaintiffs have been given sufficient notice of Defendant's intent to proceed in the alternative on a motion for summary judgment and have been given an opportunity to present all material that is pertinent to the motion. Fed. R. Civ. P. 12(d).

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In

ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

TBC argues that it is a motor carrier and that it is exempt from the overtime provisions of FLSA or IMWL under the motor-carrier exception. The FLSA contains certain exemptions for the overtime protections. 29 U.S.C.§ 213(b). One exemption, known as the motor carrier exemption, covers "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49" of the Motor Carrier Act. 29 U.S.C.§ 213(b)(1); *see also Almy v. Kickert Sch. Bus Line, Inc.*, 722 F.3d 1069, 1071 (7th Cir. 2013)(explaining that the plaintiffs were "exempt under the FLSA because the exclusive authority to set maximum hours for 'motor carriers' is vested in the Secretary of Transportation by . . . the Motor Carrier Act"); *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 660-61 (7th Cir. 2011)(stating that "[t]he FLSA requires employers to pay overtime (one-and-a-half times the hourly wage) to employees who work more than forty hours a week," but that certain motor carriers "that engage[] in interstate commerce may come under the Secretary of Transportation's jurisdiction under the Motor Carrier Act"). It is the burden of a defendant seeking to invoke the motor-carrier exemption "to show that

an employee is exempt." *Johnson*, 651 F.3d at 661; *see also Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 571 (7th Cir. 2012)(stating that in regard to the FLSA "[a]s a remedial statute, the exemptions are narrowly drawn against the employers, . . . and limited to those establishments plainly and unmistakably within their terms and spirit")(internal quotations omitted)(quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). The IMWL, similar to the FLSA, excludes from its definition of an "employee" who is protected by the IMWL, any "individual permitted to work . . . [f]or a motor carrier and with respect to whom the U.S. Secretary of Transportation has the power to establish qualifications and maximum hours of service under the provisions of Title 49 U.S.C. . . . ." 820 ILCS 105/3(d)(7); *see also Demma v. Chicago 24 Hour Towing, Inc.*, 2016 WL 1639695, at *2 (N.D. Ill. 2016)(stating that "[a] provision of the Illinois Minimum Wage Law also exempts workers covered by the Motor Carrier Act").

I. Allegations in Complaint

The court notes initially that in the complaint, Plaintiffs allege that "[a]t all times relevant TBC was not a 'motor carrier' as that term is used in the 'Motor Carrier' exemption of the FLSA." (Compl. Par. 11). Plaintiffs further allege that "[a]t all times relevant, the armored truck messengers were not covered by the Motor Carrier exemption of the FLSA." (Compl. Par. 11). Such allegations in the complaint are legal arguments and legal conclusions rather than factual allegations. Thus, even if this court were to proceed under the motion to dismiss legal standard,

4

such assertions by Plaintiffs in the complaint would not be controlling at this juncture. *See Cty. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006)(holding that at the motion to dismiss stage a court is "'not obliged to accept as true legal conclusions'")(internal quotations omitted)(quoting *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002)). As stated above, since TBC seeks to rely upon evidence outside of the pleadings, the court has converted the motion to dismiss to a motion for summary judgment.

II. Applicability of Exemption

Defendants contend that evidence and the undisputed facts show that TBC is a motor carrier and that Plaintiffs fall within the jurisdiction of the Secretary of Transportation and are covered by the motor carrier exemption. TBC has shown that the nature of its interstate operations place it under the control of the Department of Transportation. *See Almy*, 722 F.3d at 1074 (agreeing that "the only relevant issue is whether the power to control hours falls under the Department of Transportation or the Department of Labor"). While the Secretary of Labor has jurisdiction over employees that work for a motor carrier "engage[d] wholly in intrastate commerce," the Secretary of Transportation has jurisdiction under the Motor Carrier Act over employees of motor carriers "that engage[] in interstate commerce . . . ." *Johnson*, 651 F.3d at 660-61. The Seventh Circuit has stated that "[m]any motor carriers engage in both interstate and intrastate commerce, but a motor carrier employee cannot be subject to the jurisdiction of both the Secretary of Labor and the Secretary

of Transportation simultaneously." *Id.* The Secretary of Transportation "has the power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 181-82 (11th Cir. 1991).

Plaintiffs argue that TBC does not transport goods in interstate commerce under the meaning given to interstate commerce in the Motor Carriers Act. Plaintiffs cite *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895 (7th Cir. 2009), which held that "when a shipper transports his product across state lines for sale by him to customers in the destination state, and the product undergoes no alteration during its journey to the shipper's customer, and interruptions in the journey that occur in the destination state are no more than the normal stops or stages that are common in interstate sales, such as temporary warehousing, the entire journey should be regarded as having taken place in interstate commerce within the meaning of the Motor Carrier Act's exemption from the Fair Labor Standards Act." *Id.* at 898. Plaintiffs contend that they simply delivered shipments to TBC's Chicago vault and that the shipments came to rest there. Plaintiffs contend that the funds and checks were then counted, packaged, and transferred out of state without regard to particular customers and that Plaintiffs did not participate in shipping the funds and checks out

6

of Illinois.

As indicated above, Downes indicates that he worked as a messenger and Cantu indicates that he worked as a messenger and that during the last four years of his employment he worked primarily as a driver and only occasionally as a messenger. (SAF Par. 1, 7-9). TBC has presented undisputed evidence showing that Downes and Cantu, when acting as messengers, would pick up checks (Checks) from customers and deliver them to TBC's Chicago vault. (McVoy Supp. Decl. Par. 4). TBC has presented undisputed evidence showing that the Checks did not come to rest in the Chicago vault, but were instead packaged in an unaltered form and shipped out of Illinois. (McVoy Supp. Decl. Par. 4-5, 8). Plaintiffs have not presented any evidence on that point that would create a genuinely disputed fact. Such a movement of the Checks constituted interstate commerce. The undisputed evidence clearly shows that the momentary stop of the Checks at TBC's Chicago vault was nothing more than a normal stop after the first stage of a journey and was the type of temporary warehousing identified in *Collins*, that was part of interstate commerce. In accordance with *Collins* the entire journey of those Checks should be regarded as having taken place in interstate commerce. *See also Hernandez v. Brink's, Inc.*, 2009 WL 113406, at *3 (S.D. Fla. 2009)(concluding that since "Brink's and [the] [p]laintiffs were engaged in transporting checks and other property destined for interstate or foreign destinations," the "nature of Brink's relevant activities f[ell] squarely within the meaning of interstate commerce for purposes of the Motor Carrier Act"). Downes and Cantu thus participated in the

7

interstate commerce in regard to the transportation of the Checks.

Downes and Cantu also admit that they actually transported TBC's shipments across state lines themselves. Downes admits that he transported TBC's shipments from Illinois to Indiana on multiple occasions. (SAF Par. 5). Cantu also admits that he also drove TBC's shipments from Illinois to Indiana on multiple occasions. (SAF Par. 10). TBC also presents further undisputed evidence relating to Downes' and Cantu's travel with TBC's shipments from Illinois to Indiana. (McVoy Supp. Decl. Par. 6-7). Cantu further admits that approximately ten times he picked up a shipment from the air carrier freight at the airport that was traveling in interstate commerce. (SAF Par. 11).

Plaintiffs argue that any interstate commerce that they were involved in was *de minimis*. Downes contends that he only traveled across state lines occasionally when the regularly scheduled messenger did not come to work. (SAF Par. 5). Cantu contends he would only occasionally drive shipments to Indiana. (SAF Par. 10). However, the Seventh Circuit has held that "[a]n employee comes within the Secretary of Transportation's jurisdiction so long as the employee is subject, at any time, to be[ing] assigned to interstate trips." *Johnson*, 651 F.3d at 660-61 (internal quotations omitted)(quoting *Goldberg v. Faber Indus., Inc.*, 291 F.2d 232, 234-35 (7th Cir. 1961)). Plaintiffs' travel from Illinois to Indiana fell within the scope of the Motor Carrier's Act. In *Collins*, the Seventh Circuit was presented with a similar argument when the plaintiffs argued that they occasionally engaged in work that did not fall within the coverage of the Motor Carrier Act. 589 F.3d at 901. The Seventh

8

Circuit stated that "to divide jurisdiction in this way would be contrary to the Supreme Court's sensible decision in *Morris v. McComb*, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947), which held that the employer of a driver who may sometimes be required to deliver goods in interstate commerce is subject to the Motor Carrier Act even if most of his driving is intrastate." *Id.* In the instant action, the fact that the main focus of Plaintiffs' jobs may not have involved extensive travel out of state does not mean that they were acting outside the coverage of the Motor Carrier Act. The undisputed facts indicate that Plaintiffs' interstate travel was part of their regular job duties and that TBC engaged in interstate commerce within a reasonable amount of time prior to the time that TBC claims the exemption. *Johnson*, 651 F.3d at 662 (indicating that the defendant has to show that the defendant "engaged in interstate commerce within a 'reasonable period of time' prior to the time during which it claims the exemption"); *Demma*, 2016 WL 1639695, at *4 (finding that the exemption applied, stating that "[a]lthough the plaintiffs' interstate trips were infrequent, they were a regular part of their job duties and something within the reasonable expectation of any of [the defendant's] drivers"). Downes also contends that he only transported shipments to Indiana on five occasions. (SAF Par. 5). However, the undisputed facts show that Downes only worked for TBC for approximately ten months, and five times in ten months is not a negligible amount. (RSF Par. 5). Plaintiffs participated at least occasionally in interstate commerce subjecting themselves to the jurisdiction of the Secretary of Transportation under the Motor Carrier Act and Plaintiffs thus could not be subject

to the jurisdiction of the Secretary of Labor and the FLSA. *Johnson*, 651 F.3d at 660-61.

Plaintiffs also argue that Downes, when acting as a messenger, performed only limited duties regarding the armored cars and thus was not governed by the Motor Carrier Act. However, the position of messenger clearly falls within the definition of "drivers" or "driver's helpers" under the Motor Carrier Act. *Hernandez*, 2009 WL 113406, at *4 (citing 29 C.F.R. § 782.4 and concluding that a messenger falls within the motor-carrier exemption). TBC has presented evidence showing that Downes did perform duties directly affecting the vehicles' safety operations and that his job was governed by the Motor Carrier Act. Based on the above, TBC's motion for summary judgment is granted.

## CONCLUSION

Based on the foregoing analysis, TBC's motion for summary judgment is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 6, 2016